# ARMED SERVICES BOARD OF CONTRACT APPEALS

| | |
|---|---|
| Appeals of -- | ) |
| | ) |
| Supreme Foodservice GmbH | ) ASBCA Nos. 57884, 58666, 58958 |
| | ) 58959, 58982, 59038 |
| | ) 59164, 59165, 59391 |
| | ) 59392, 59393, 59418 |
| | ) 59419, 59420, 59481 |
| | ) 59615, 59618, 59619 |
| | ) 59636, 59653, 59675 |
| | ) 59676, 59681, 59682 |
| | ) 59683, 59811, 59830 |
| | ) 59863, 59867, 59872 |
| | ) 59879, 60017, 60024 |
| | ) 60250, 60309, 60365 |
| Under Contract No. SPM300-05-D-3130 | ) |

APPEARANCES FOR THE APPELLANT:  Philip J. Davis, Esq.
                Rand L. Allen, Esq.
                Nicole J. Owren-Wiest, Esq.
                John R. Prairie, Esq.
                Tara L. Ward, Esq.
                J. Ryan Frazee, Esq.
                 Wiley Rein LLP
                 Washington, DC

APPEARANCES FOR THE GOVERNMENT:  Daniel K. Poling, Esq.
                 DLA Chief Trial Attorney
                John F. Basiak Jr., Esq.
                Keith J. Feigenbaum, Esq.[1]
                Kari L. Scheck, Esq.
                Theodore E. Lorenz, Esq.
                 Trial Attorneys
                 DLA Troop Support
                 Philadelphia, PA

---

[1] Mr. Feigenbaum appeared on behalf of the government when the motion was filed but has since withdrawn his appearance.

## OPINION BY ADMINISTRATIVE JUDGE SCOTT ON THE GOVERNMENT'S MOTION FOR RECONSIDERATION IN PART

### BACKGROUND

The captioned appeals involve approximately $8.3 billion in claims by the Defense Logistics Agency (DLA) concerning the subject contract for the delivery of food, water and other products to the United States military and DLA customers in Afghanistan. DLA's major claim is that the contract is void *ab initio* due to fraud by appellant Supreme Foodservice GmbH (Supreme) at contract inception and that DLA is entitled to the return of all monies it paid Supreme during contract performance. The appeals also involve various claims by Supreme, totaling about $3 billion.[2]

Before discovery was complete, DLA moved for summary judgment on three of its affirmative defenses, including that Supreme committed the first material contract breach. One aspect of that defense was based upon a guilty plea by Supreme in a criminal proceeding with regard to certain fraud issues, including the pricing of food and water to be delivered under the contract. As relevant to the instant motion, Supreme moved to strike DLA's first material breach defense due to waiver, based upon contract Modification No. 00092 (Mod. 92), which extended the contract for two years after DLA was allegedly aware of Supreme's conduct cited in its guilty plea or alternatively for summary judgment on the waiver defense. In *Supreme Foodservice GmbH*, ASBCA No. 57884 *et al.*, 16-1 BCA ¶ 36,387 (*Supreme* decision), the Board denied DLA's motion for summary judgment due to material facts in dispute. Also due to material facts in dispute and an insufficiently developed record, the Board denied Supreme's motion to strike DLA's first material breach defense, or alternatively for summary judgment.

DLA moves for partial reconsideration of our decision on the sole ground that it was entitled to summary judgment on the portion of its first material breach defense that was based upon the Board's decision in *Laguna Construction Co.*, ASBCA No. 58324, 14-1 BCA ¶ 35,748 (*Laguna I*). DLA described this as its "*Laguna* defense – that is, first material breach based exclusively on Supreme's guilty plea" (gov't recon. mot. at 4). Thereafter, the U.S. Court of Appeals for the Federal Circuit affirmed *Laguna I* in *Laguna Construction Co. v. Carter*, 828 F.3d 1364 (Fed. Cir. 2016) (*Laguna II*), and the parties submitted supplemental briefs on DLA's reconsideration motion. At DLA's request, the Board, sitting in a panel, heard oral argument on the motion.

---

[2] Supreme filed additional appeals, Nos. 60724, 60832, and 61069, after the Board issued the decision at issue in Supreme's reconsideration motion.

## THE PARTIES' CONTENTIONS[3]

DLA asks the Board to grant its motion for reconsideration and to deny all of Supreme's claims. In its original reconsideration motion DLA stressed that its *Laguna* defense was based upon Supreme's guilty plea. In its motion and/or at oral argument, DLA contended that:

(1) The Board erred in holding that further discovery of facts underlying Supreme's guilty plea was necessary. The plea itself was DLA's affirmative defense. Under the doctrine of collateral estoppel, the Board is bound by the same factual findings and legal conclusions made by the U.S. district court in the criminal proceeding (a new contention not made in DLA's summary judgment motion).

(2) Mod. 92 did not create material fact issues concerning waiver or accord and satisfaction; it was neither. It reserved DLA's rights against Supreme, as did Supreme's settlement agreement with the U.S. Department of Justice (DOJ).

(3) Consistent with Board precedent concerning parallel civil and criminal proceedings, DLA properly waited for ongoing criminal investigations to end before pursuing its first material breach claim. Supreme's guilty plea was the strongest evidence of its breach. Prior thereto, DLA could not ascertain at what point it could assert its rights.

(4) Mod. 92's extension of the contract's performance period was not an abandonment of DLA's right to assert its first material breach defense because Supreme was the only source available to satisfy the agency's needs and the modification reserved the parties' rights and required Supreme to cooperate in any government investigation. Thus, Supreme cannot argue reliance or prejudice.

(5) The Board erred in analyzing DLA's first material breach defense together with other of its affirmative defenses, rather than as a stand-alone defense.

(6) Supreme violated FED. R. CIV. P. 56(d) and Board Rule 7(c)(2) concerning oppositions to summary judgment motions by speculating that material facts are in dispute without citing to record evidence or submitting any affidavits in support.

In supplemental briefing concerning *Laguna II*, and/or at oral argument, DLA alleged the following:

---

[3] We have considered all of the parties' arguments whether or not listed or discussed in this decision.

3

(1) *Laguna II* is dispositive that Mod. 92 cannot constitute a waiver of DLA's first material breach affirmative defense. Supreme's guilty plea proved that defense. DLA did not have the "known right" required in a waiver analysis until that plea. Mod. 92 could not constitute specific evidence of waiver because it preserved the status quo between the parties, and it could not provide contractual remedies for Supreme's breach because a CO does not have authority to resolve fraud matters. Moreover, Supreme continued to overcharge for bottled water after Mod. 92's execution, so the modification could not have resolved matters (tr. 5).[4] DLA acknowledged, however, that "bottled water fraud" ceased in 2007 and Supreme's additional reimbursement for the water from 2007 until the end of the contract was not an admission of criminal fraud (tr. 69).

(2) During oral argument, DLA apparently abandoned its formerly key contention that Supreme's first material breach occurred upon its guilty plea. Instead, it now claims that "Supreme breached the contract in 2005, when it first established [its affiliated entity known as] JAFCO, in order to artificially inflate product prices for fresh fruits and vegetables" (tr. 19).

Overall, Supreme claims that DLA is rearguing and reframing the first material breach affirmative defense set forth in its summary judgment motion. Supreme asserts that the Board fully considered DLA's *Laguna* defense and rejected it; DLA is relying upon matters that it raised, or could have raised, in its summary judgment motion; it has not identified any newly discovered evidence, errors in the Board's fact findings, or errors of law; and reconsideration is not warranted.

In its original opposition to DLA's motion for reconsideration and/or at oral argument, Supreme asserted that:

(1) DLA did not stress *Laguna I* in its summary judgment motion. Moreover, it both misconstrued the Board's holding there and did not acknowledge the key distinctions between the instant case and *Laguna I*, where waiver was not raised as a defense to the government's first material breach claim.

(2) The *Laguna* defense DLA presented in its reconsideration motion—that Supreme's guilty plea itself constituted the first material breach—was a new argument that it did not make in its summary judgment motion, where it alleged that Supreme engaged in fraud through JAFCO, and the underlying JAFCO fraud was the breach.

---

[4] All transcript references are to the transcript of the oral argument on DLA's motion for reconsideration.

4

(3) Mod. 92 did not maintain the status quo. It required various disclosures by Supreme and extracted a contractual remedy for the JAFCO arrangement.

(4) The fact that the civil settlement agreement reserved DLA's right to assert affirmative defenses against Supreme did not mean that DLA's material breach defense was not waived or barred by the doctrine of accord and satisfaction. Moreover, the settlement agreement expressly reserved Supreme's right to oppose or challenge any affirmative defenses alleged by DLA.

(5) The Board separately evaluated what DLA now characterizes as its *Laguna* defense and properly concluded that there are material facts in dispute regarding Mod. 92, waiver, and accord and satisfaction that preclude summary judgment. For example, discovery will demonstrate that DLA elected to continue Supreme's substantive contract performance with full knowledge of the JAFCO conduct to which it later pleaded guilty.

In supplemental briefing and/or at oral argument, Supreme alleged:

(1) If Supreme's guilty plea were the measuring point of its alleged breach, it would not be a "prior" material breach because the government had committed various breaches by that time. Thus, none of Supreme's claims concerning those breaches should be dismissed.

(2) Supreme does not dispute the guilty plea or the negotiated statement of facts accompanying it, rendering the doctrine of collateral estoppel irrelevant. The doctrine does not apply in any event because the issues currently before the Board differ from those before the district court in the criminal proceedings and relate solely to the parties' contractual rights, which were expressly excluded from Supreme's settlement agreement with DOJ.

(3) *Laguna II* supports the Board's denial of DLA's summary judgment motion because it makes clear that the government can waive a defense of first material breach and that waiver is a highly fact-specific inquiry. Notably, the court stated in *Laguna II* that its holding on the issue of waiver was based upon the particular facts of that case.

(4) The record already contains significant and specific evidence demonstrating that DLA learned of the JAFCO conduct underlying Supreme's guilty plea prior thereto and elected to resolve the issue contractually and to continue with performance. Mod. 92 and exhibits Supreme submitted in opposition to DLA's summary judgment motion, such as those pertaining to communications between the parties concerning JAFCO's affiliation with Supreme and discussions between them regarding pricing prior to Mod. 92's execution, are evidence of DLA's prior

5

knowledge of the underlying misconduct. Moreover, discovery is ongoing and depositions of key witnesses with knowledge about Mod. 92, including the contracting officer and other DLA and Supreme officials, had not yet occurred (or had not occurred as of the completion of briefing and oral argument on the reconsideration motion). Additionally, as DLA acknowledges, Supreme denies that there was any fraud concerning bottled water after 2007 and it contends that there is still discovery to be done on the bottled water reconciliation issue.

## STANDARDS FOR RECONSIDERATION

In deciding a motion for reconsideration, we look to whether the movant has presented newly discovered evidence, mistakes in findings of fact, or errors of law. *Kellogg Brown & Root Services, Inc.*, ASBCA Nos. 57530, 58161, 16-1 BCA ¶ 36,554 at 178,039. A reconsideration motion is not an opportunity to reargue issues previously raised and decided, or to advance arguments that should have been presented in an earlier proceeding. *Precision Standard, Inc.*, ASBCA No. 59116, 15-1 BCA ¶ 36,155 at 176,445; *Avant Assessment, LLC*, ASBCA No. 58867, 15-1 BCA ¶ 36,137 at 176,384. A party moving for reconsideration "must show a compelling reason" why the Board should alter its decision. *Precision Standard*, 15-1 BCA ¶ 36,155 at 176,445.

In this case, although DLA has not otherwise satisfied the criteria for reconsideration, due to the Federal Circuit's issuance of *Laguna II* shortly after we issued our *Supreme* decision, which had addressed *Laguna I*, we will reconsider our decision solely as it relates to DLA's affirmative defense of first material breach based upon the *Laguna* decisions. In that context we discuss Supreme's waiver defense.[5]

## PRELIMINARY MATTERS

Preliminarily, we correct a few of DLA's misapprehensions. First, the Board never "held" that further discovery was necessary concerning Supreme's settlement agreement and guilty plea. We noted that the record to date does not fully explicate the underlying facts. We are not aware of what other facts the parties might know or seek. Regarding DLA's claim that the Board is bound by the doctrine of collateral estoppel, the Board is focused upon facts bearing upon the parties' contractual rights. We have no intention of attempting to relitigate the criminal proceedings or to make factual determinations of fraud, which we lack jurisdiction to do nor have we been asked to do so.

---

[5] The contractor did not raise waiver as a defense in *Laguna I* but the court addressed it in *Laguna II*.

Second, one aspect of DLA's contention that Supreme's opposition to its summary judgment motion did not satisfy FED. R. CIV. P. 56(d) or Board Rule 7(c)(2) is that Supreme did not submit affidavits. While, as with Rule 7(c)(2), the Board looks to FED. R. CIV. P. 56 for guidance, we are not bound by the Federal Rules. *Thai Hai*, ASBCA No. 53375, 02-2 BCA ¶ 31,971 at 157,920, *aff'd, Thai Hai v. Brownlee*, 82 F. App'x 226 (Fed. Cir. 2003) (unpublished). Regardless, the discovery period in these appeals has not ended. Supreme represents that the parties had not conducted discovery on the issue of first material breach or any of the other issues raised in DLA's summary judgment motion before DLA filed the motion (app. resp. to gov't recon. mot. at 13). Although Supreme desires that discovery continue, it never asked the Board to defer ruling upon DLA's summary judgment motion or claimed that, without further discovery, it could not present facts essential to its opposition to the motion, unlike the circumstances concerning affidavits addressed in FED. R. CIV. P. 56(d) and *Dongbuk R&U Engineering Co.*, ASBCA No. 58300, 13 BCA ¶ 35,389 at 173,638, cited by DLA.

Moreover, Supreme complied with Board Rule 7(c)(2) by citing to the current record in its opposition (*see, e.g.*, app. *Laguna II* reply br. at 7; tr. 42-44). *Supreme*, 16-1 BCA ¶ 36,387 at 177,377, Statement of Fact (SOF) ¶ 39 (referring to Supreme's exhibits about a meeting with the contracting officer in September 2008, when JAFCO charges allegedly were raised, and to an alleged 15 June 2009 presentation by Supreme to DLA, DOJ, the Defense Criminal Investigative Service, and the Army Criminal Investigation Command concerning JAFCO). Supreme also submitted materials obtained in discovery after DLA filed its summary judgment motion (*see* app. *Laguna II* reply br. at 8; tr. 44-45). These materials include minutes of an 11 March 2009 meeting between DLA and Supreme involving alleged overcharging through JAFCO. All of the referenced meetings took place prior to Mod. 92, which was effective on 20 December 2010 (*Supreme*, 16-1 BCA ¶ 36,387 at 177,378, SOF ¶ 44), and prior to Supreme's guilty plea, which occurred on 8 December 2014. *Id.* at 177,381, SOF ¶ 53.

Lastly, regardless of its acknowledgement that "[t]here is no dispute that DLA repeatedly asserted that the Board should not evaluate Supreme's misconduct in isolation" (gov't recon. mot. at 17; *see, e.g.*, gov't summ. j. mot. at 59), DLA now alleges that the Board erred in not treating what it now calls its "*Laguna* defense" separately. However, the Board considered it both separately and together with DLA's other first material breach defenses. *Supreme*, 16-1 BCA ¶ 36,387 at 177,398-99.

## SUMMARY JUDGMENT DOCTRINE

We evaluate DLA's reconsideration motion in light of the established standard that summary judgment is appropriate only when there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Mingus*

*Constructors, Inc. v. United States*, 812 F.2d 1387, 1390-91 (Fed. Cir. 1987). There is a genuine issue of material fact if a reasonable fact finder could find in favor of the nonmovant. We resolve any significant doubt over fact issues, and draw all reasonable inferences, in favor of the party opposing summary judgment. *MIC/CCS, Joint Venture*, ASBCA No. 58023, 14-1 BCA ¶ 35,678 at 174,635.

## FIRST MATERIAL BREACH DOCTRINE

The Federal Circuit has described the doctrine of first material breach as follows:

> [W]hen a party to a contract is sued for breach, it may defend on the ground that there existed a legal excuse for its nonperformance at the time of the alleged breach. Faced with two parties to a contract, each of whom claims breach by the other, courts will "often...impose liability on the party that committed the first material breach."

*Barron Bancshares, Inc. v. United States*, 366 F.3d 1360, 1380 (Fed. Cir. 2004) (citations omitted); *see also Supreme*, 16-1 BCA ¶ 36,387 at 177,398-99.

## WAIVER DOCTRINE

As the Board set forth in the *Supreme* decision, a contracting party can waive a breach as follows:

> Waiver is a "*voluntary* and intentional relinquishment of a known right. A party to a contract may waive the other party's breach by continuing to accept the breaching party's performance without reservation of rights. The breaching party bears the burden to prove waiver. Conduct or actions that mislead the breaching party into reasonably believing that the rights to a claim arising from the breach were waived can result in an implied waiver.
>
> A right to cancel a contract for breach must be exercised with reasonable promptness after discovery of the breach. However, continuing with a contract is not necessarily conclusive of waiver. Whether waiver has occurred involves a more complex inquiry than merely ascertaining whether performance continued. An

examination must be made of whether, in the circumstances of the particular case, the contracting party whose obligation to perform had been discharged by breach exercised reasonable commercial judgment in continuing to perform. An election to continue with a contract might be an indispensable course of action which was the only practicable one.

16-1 BCA ¶ 36,387 at 177,395 (citations omitted); *see also Laguna II*, 828 F.3d at 1372. Waiver of a first material breach defense can occur through continued contract performance even if material misrepresentation is allegedly involved. *Barron Bancshares*, 366 F.3d at 1382.

## LAGUNA I AND LAGUNA II

In *Laguna I*, the Board granted summary judgment to the government that the contractor had committed the first material breach through subcontractor kickbacks taken by its agents and its submission to the government of payment vouchers inflated by the kickbacks. The contractor's project manager had plead guilty in 2010 to conspiring in a kickback scheme and its vice president of operations plead guilty in 2013 to soliciting and receiving kickbacks and to conspiracy. The government rejected the contractor's payment vouchers in 2012, before the second guilty plea.

The Board set forth facts contained in the plea agreements and determined that the contractor had breached both its duty of good faith and fair dealing and the contract's Allowable Cost and Payment clause. Referring to the kickbacks and inflated billings, the Board described "these criminal acts" as constituting the first material breach that subsequently excused the government from paying the contractor's invoices. *Laguna I*, 14-1 BCA ¶ 35,748 at 174,949.

In *Laguna II* the Federal Circuit affirmed *Laguna I* on the basis that the contractor committed the first material breach by violating the Allowable Cost and Payment clause. The court described the admissions by the contractor's project manager and vice president in their plea agreements and concluded that the Board had properly determined that "these criminal acts constituted material breach" that could be imputed to the contractor. *Laguna II*, 828 F.3d at 1372. The court continued that *"[b]ased on the facts of this case*, Laguna's employees' *criminal acts* constitute a first material breach of its contract with the government." *Id*. (emphasis added).

Before the Federal Circuit, the contractor contended that the government knew of the kickback scheme as early as January 2008 but continued to perform the contract until 2015 and thereby waived its prior material breach defense. The court noted that

9

the alleged continued performance included only the government's payment of certain incurred costs and its audit of the contractor's cost statements. The court stated that *"[i]n light of the facts of this case,* we do not find these arguments persuasive." *Laguna II,* 828 F.3d at 1372 (emphasis added). The court concluded that it was reasonable for the government to have invoked the prior material breach rule after the vice president's guilty plea in 2013 and that *"[t]herefore,"* prior to this date, the government did not have a "known right" that would have invoked the prior material breach rule. *Id.* (emphasis added). Thus, in evaluating when a known right accrued to the government, the court considered what was reasonable under the particular facts and circumstances involved.

Further, as part of its waiver analysis, in response to the contractor's claim that the government had waived its prior material breach defense by its continued contract performance, the court stated that, "[i]n addition," after the contractor completed its physical work in 2010, the government's sole acts were to conduct audits and make cost reimbursements. *Laguna II,* 828 F.3d at 1372. The court did not accept the contractor's contention that it relied upon these acts to its detriment by performing final accounting and audit tasks, stating that the contractor would have performed them even if the government had terminated the contract.

The court held that, because the first material breach rule applied, the government's non-performance was excused by the contractor's earlier violation of the Allowable Cost and Payment clause. Unlike the Board, the court did not discuss the implied duty of good faith and fair dealing.

In oral argument on its reconsideration motion, DLA abandoned its prior stance that Supreme's guilty plea itself was the first material breach. DLA now advocates that the breach occurred in 2005, when Supreme first established JAFCO. Nonetheless, DLA continues to assert that it did not have a "known right" to claim breach until the guilty plea occurred. In the end, however, DLA does not deny all prospect of a government waiver even when a guilty plea is involved. It stated at oral argument that:

> [W]e have never asserted, and I don't think the Federal Circuit holds that, there can never [be] a waiver.
>
> On the contrary, after the accrual of the known right the – in addition is, what other performance was completed and what did the government do?

(Tr. 63)

DLA relies, *inter alia*, upon *Laguna II*, *C&D Construction, Inc.*, ASBCA No. 38661, 90-3 BCA ¶ 23,256, and *United States v. The Public Warehousing Company*, 2017 WL 1021745 (N.D. Ga. 16 March 2017) (*PWC*), a decision DLA submitted to the Board on 27 March 2017, decided after briefing and oral argument were complete on DLA's reconsideration motion. DLA claims that *Laguna II* and *PWC* establish a "bright line" standard that the government cannot have a "known right" for purposes of waiver until there is a guilty plea (DLA supp. *Laguna* reply br. at 5; Bd. corr., DLA's 22 March 2017 ltr. at 1).

Supreme claims that *Laguna II* illustrates that the conduct underlying the guilty plea, not the plea itself, forms the basis for a first material breach defense. It contends that DLA elected to extend the contract for years and continue with substantive performance with full knowledge of the JAFCO conduct, thereby waiving that defense. Supreme asserts that *Laguna II's* waiver language is fact-based; waiver requires a factual inquiry; the court did not mention collateral estoppel; *Laguna II* did not establish the "bright-line" standard alleged by DLA as to when the government has a known right in the waiver context; and material facts remain in dispute as to when DLA learned of the conduct underlying Supreme's plea.

Supreme also alleges, in effect, that Mod. 92 is ambiguous, such that the Board must examine extrinsic evidence, including testimony by those involved in negotiating the modification. Factual issues remain concerning the parties' intent in entering into Mod. 92, its meaning, and why DLA elected to continue with contract performance after learning of the JAFCO conduct.

## DISCUSSION

DLA expands the *Laguna II* decision unreasonably. It did not establish the "bright line" standard alleged by DLA, i.e., that the government cannot have a "known right" for purposes of waiver until a guilty plea occurs. DLA contends that its interpretation is supported by the fact that, consistent with Board precedent, such as *C&D Construction*, the natural progression of parallel criminal and civil proceedings is for the parties and the Board to wait upon the resolution of the former before continuing with the latter. *Laguna II* did not mention this rationale and the Board has held that nothing in *Laguna II* mandates such a suspension. *Kellogg Brown & Root Services, Inc.*, 16-1 BCA ¶ 36,554 at 178,040. When the Board is confronted with allegations of potential interference with criminal proceedings, its discretion to stay its own proceedings calls for a factual inquiry and for it to weigh the parties' competing interests. *See Public Warehousing Co., K.S.C.*, ASBCA No. 56116, 08-1 BCA ¶ 33,787 at 167,226.

11

The court in *Laguna II* determined that it was reasonable under the circumstances for the government to assert first material breach after a contractor's employee's conviction, but this does not lead to DLA's conclusion that, in a case which involves criminal proceedings at some point, the government cannot ever have a "known right" until the proceedings conclude. The court in *Laguna II* stated that its conclusion that the criminal acts of the contractor's employees constituted a first material breach was based upon the facts of the case. It also reached its additional conclusion that the government's administrative acts in winding up the contract did not waive its first material breach claim, in light of the facts of the case.

*C&D Construction*, upon which DLA places considerable weight, was not a first material breach case. There, the contractor contended that the government had waived its right to void the contract because it was aware of an investigation into the contractor's alleged pre-award misrepresentation of its small business status but had allowed it to perform, in lieu of suspending it, to the contractor's detrimental reliance. After a hearing, the Board held that the contract was void. It stated that:

> [T]he strongest evidence of appellant's misrepresentation came with the guilty plea…, which followed the completion of contract performance. We are in no position to ascertain at what point, if any, a suspension might have been appropriate.

90-3 BCA ¶ 23,256 at 116,684. As Supreme suggests, the Board's statement about its inability to ascertain the correct timing of any potential suspension could refer to a lack of evidence on point (tr. 58). In any event, the Board made fact findings and did not purport to establish a bright line rule about any conclusive effect of a guilty plea in all cases when analyzing a waiver defense.

Further, the recent district court *Public Warehousing* decision upon which DLA relies is not binding precedent upon the Board. Regardless, it involved a *qui tam* action under the False Claims Act (FCA), 31 U.S.C. §§ 3729-3733. In part, the defendants moved to dismiss the complaint pursuant to FED. R. CIV. P. 9(b), for failure to plead fraud with particularity, and 12(b)(6), for failure to state a claim. In part they alleged that the government had full knowledge of alleged misrepresentations but continued to pay under the contracts involved. Thus, the misrepresentations could not have been material, a prerequisite for an FCA action under the circumstances.

The court opined that, unless the government knew about the defendants' alleged deception, it could not have knowledge that would undermine a materiality finding. By "government," the court referred to those personnel actually involved in the contractual relationships. The court noted that the U.S. Attorney's Office and

12

DLA (then the Defense Supply Center), had little contact with one another. It stated that a mere suspicion of wrongdoing was not enough and the appropriate time to impute knowledge was at the end of an investigation, not at the beginning. The court also opined that, even if DLA were aware of the fraud, there were instances when a government agency might choose to continue to fund a contract, especially if it were essential to an important government interest. The court granted one of the defendants' dispositive motions and denied others, stating that it required more evidence on some of them.

Here, Supreme alleges, with reference to the evidence cited above, that the current record shows, and further discovery will reveal, that the government had the known right required for waiver before Supreme's guilty plea. It does not allege that DOJ's knowledge should be imputed to DLA but rather that DLA itself knew of all material facts underlying its *Laguna* first material breach defense and chose to continue with substantive contract performance. It is evident that there are material facts in dispute concerning these issues.

Also, the parties dispute the meaning and intent of Mod. 92. If it is ambiguous, the Board may consider extrinsic evidence of intent. *See Teg-Paradigm Environmental, Inc. v. United States*, 465 F.3d 1329, 1338 (Fed. Cir. 2006). Supreme contends that, via Mod. 92, DLA extracted a contractual remedy for the conduct underlying Supreme's eventual guilty plea. DLA counters that Mod. 92 merely maintained the status quo. "When the meaning of a contract and the parties' intentions are both relevant and in dispute, there are mixed questions of fact and law that pose triable issues precluding summary judgment." *AshBritt, Inc.*, ASBCA Nos. 56145, 56250, 09-2 BCA ¶ 34,300 at 169,434; *see also International Source and Supply Inc.*, ASBCA Nos. 52318, 52446, 00-1 BCA ¶ 30,875 at 152,434 (The Board does not interpret contractual terms in a vacuum; its goal is to arrive at an interpretation that accurately reflects the parties' intentions; when it is necessary to consider extrinsic evidence of intent, summary judgment is inappropriate.). The parties' intentions in not only continuing with, but extending substantive contract performance, and what options were available to DLA at the time it learned of Supreme's alleged breach, and at the time it entered into Mod. 92, are material facts in dispute.

In sum, there is no bright line standard that the government cannot have a known right, as pertinent to its alleged waiver of a material breach claim, prior to the entry of a guilty plea. The Board must examine the particular facts involved. Here, material facts in dispute preclude summary judgment for DLA, which has not shown any compelling reason why the Board should alter its *Supreme* decision.

## DECISION

Having reconsidered our decision in *Supreme Foodservice GmbH*, ASBCA No. 57884 *et al.*, 16-1 BCA ¶ 36,387, we reaffirm it.

Dated: 27 April 2017

CHERYL L. SCOTT
Administrative Judge
Armed Services Board
of Contract Appeals

I concur

MARK N. STEMPLER
Administrative Judge
Acting Chairman
Armed Services Board
of Contract Appeals

I concur

RICHARD SHACKLEFORD
Administrative Judge
Vice Chairman
Armed Services Board
of Contract Appeals

I certify that the foregoing is a true copy of the Opinion and Decision of the Armed Services Board of Contract Appeals in ASBCA Nos. 57884, 58666, 58958, 58959, 58982, 59038, 59164, 59165, 59391, 59392, 59393, 59418, 59419, 59420, 59481, 59615, 59618, 59619, 59636, 59653, 59675, 59676, 59681, 59682, 59683, 59811, 59830, 59863, 59867, 59872, 59879, 60017, 60024, 60250, 60309, 60365, Appeals of Supreme Foodservice GmbH, rendered in conformance with the Board's Charter.

Dated:

JEFFREY D. GARDIN
Recorder, Armed Services
Board of Contract Appeals

14